UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

WILLIAM K. PRZYBYSZ,

        Debtor.

Case No. DG 10-07110
Hon. Scott W. Dales
Chapter 7

_____/


JEFF A. MOYER,

        Plaintiff,

v.

DAVID KOOISTRA, an individual, and
NICOLE M. KOOISTRA, an individual,

        Defendants.

Adversary Pro. No. 12-80175

_____/


OPINION AND ORDER REGARDING SECOND DISMISSAL MOTION

PRESENT:    HONORABLE SCOTT W. DALES
                United States Bankruptcy Judge


I.  INTRODUCTION

Chapter 7 trustee Jeff A. Moyer (the "Trustee") alleges that debtor William K. Przybysz

(the "Debtor") used several entities including the Miracle Match Foundation ("MMF") and WKP

Enterprises, LLC ("WKPE" and, with MMF, collectively the "Related Entities") as

instrumentalities to conduct a classic Ponzi scheme.   The Trustee commenced numerous

adversary proceedings, including this one, to recover from various defendants money that the

Debtor and the Related Entities allegedly transferred in furtherance of the scheme.  The Trustee's

pleadings, initially vague, have grown considerably more specific with each amendment, but not

any less controversial given his continued reliance on the alter ego doctrine to meld the Related Entities into the Debtor as a predicate for avoiding prepetition transfers dating back to 2006.

The principal issue for decision is whether the Trustee may treat the Related Entities as the Debtor for purposes of exercising the estate's power to avoid fraudulent transfers under 11 U.S.C. § 544(b), or in other words, whether, at the time of the transfers, the Debtor had any interest in the property of the Related Entities that would have been included within his bankruptcy estate had the transfers not occurred.

Although the court accepts the Trustee's well-pleaded factual allegations under Fed. R. Civ. P. 12(b)(6), it rejects his legal theory as not viable under either state or federal law, and will not permit him to avoid the transfers effected by the Related Entities.

## II.  JURISDICTION AND RELATED MATTERS

The United States District Court has jurisdiction over the Debtor's chapter 7 bankruptcy case pursuant to 28 U.S.C. § 1334, but has referred the case and related proceedings to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.).  This adversary proceeding and the other twenty proceedings considered in this Opinion and Order are core proceedings as a statutory matter because they are proceedings to "determine, avoid, and recover fraudulent conveyances."  28 U.S.C. § 157(b)(2)(H).

Nevertheless, in our Circuit the reverberation of the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), casts doubt on a bankruptcy court's authority to enter final judgment, making it increasingly difficult to determine the form of the court's disposition.  *See Waldman v. Stone*, 2012 WL 5275241 (6th Cir. Oct. 26, 2012) (stating in *dicta* that "only an Article III court can enter final judgment on [a fraudulent conveyance] claim"); *Onkyo Europe Electronics GMBH v. Global Technovations Inc. (In re Global Technovations Inc.),* 694 F.3d

705 (6th Cir. 2012) (recognizing bankruptcy court authority to enter final judgment in fraudulent conveyance dispute against creditor who filed claim against the estate).

The court requested briefing on this issue from the parties, but they declined, evidently believing, as many bankruptcy practitioners did until recently, that the parties' consent to entry of final judgment by a bankruptcy judge rendered the issue academic. Unfortunately, the *Waldman* decision seems to suggest that parties cannot consent to final relief by the bankruptcy court because the constitutional underpinnings of *Stern* serve as a "structural principle" that "safeguards the role of the Judicial Branch in our tripartite system by barring congressional attempts to transfer jurisdiction to non-Article III tribunals . . ." *Waldman*, 2012 WL 5275241, *4 (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850 (1986)). According to the latest direction from our Circuit, the constitutional principle, unlike a personal right, is not a litigant's to waive.

In analyzing bankruptcy court authority, *Waldman*, more than *Global Technovations*, appears to focus on the effect of the bankruptcy court's decision on the parties. If the bankruptcy court is carving up the bankruptcy estate (as in the claims allowance process), its constitutional authority seems more secure; if, however, the court's judgment will augment the estate, its authority wanes. Attempting to read the constitutional tea leaves through an increasingly murky and bitter brew, the court has determined not to make a recommendation to the United States District Court regarding the various dismissal motions, but instead to resolve them.[1]

---

[1] Indeed, the present constitutional crisis in the bankruptcy courts is a tempest in a teapot: the United States District Court can readily protect its bankruptcy jurisdiction from non-tenured judicial officers by not referring bankruptcy cases to them in the first place, or by withdrawing any jurisdiction previously referred. *See* 28 U.S.C. § 157(a) (authorizing but not requiring referral); *id.* § 157(d) (authorizing district court to withdraw the reference). The judicial branch has the power to appoint and remove bankruptcy judges and review bankruptcy court decisions for those who seek such review. In other words, Congress responded to *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), with an appropriate, non-threatening, and practical solution. The court concedes, however, that this view did not persuade a majority of justices in *Stern*.

First, with respect to the adversary proceedings that survive the dismissal motions, the court's order will be interlocutory, not final, and therefore well within the court's authority. Second, with respect to proceedings that the court intends to dismiss, the orders will not augment the estate. Moreover, the Trustee's office is a creature of federal law, and the Trustee subjected himself to the bankruptcy court's authority by filing his pleading here, and later, by consenting to a final order (assuming such consent remains effective after *Waldman*). If a reviewing court disagrees, perhaps it will be possible to "recast" the form of the decision as in *Waldman*, but for now, the court's decision on the motions will not be precatory.

### III.  PROCEDURAL HISTORY

For the reasons set forth in a written opinion entered in a related adversary proceeding[2] but applying to this one and many others, the court refused to dismiss the Trustee's first amended complaint, but required him to file amended pleadings comprising a more definite statement of his claims. More specifically, the court directed the Trustee to allege the date, amount, method and source of each payment included within the aggregate "Transfers" that he seeks to avoid and recover as fraudulent conveyances arising out of the Debtor's alleged Ponzi scheme. The present iteration of his complaint -- his third -- has drawn motions to dismiss in twenty-one separate adversary proceedings.[3]

---

[2] *Moyer v. Koster et al.*, Adv. No. 12-80174.

[3] The respective adversary proceedings include the following:  *Moyer v. Koster et al.*, Adv. No. 12-80174; *Moyer v. Kooistra et al.*, Adv. No. 12-80175; *Moyer v. DeKock*, Adv. No. 12-80176; *Moyer v. Lankfer*, Adv. No. 12-80177; *Moyer v. Buggia,* Adv. No. 12-80179; *Moyer v. Dye*, Adv. No. 12-80181; *Moyer v. Wieland*, Adv. No. 12-80182; *Moyer v. Driesenga*, Adv. No. 12-80183; *Moyer v. VanSolkema et al.*, Adv. No.  12-80191; *Moyer v. VanSolkema et al.*, Adv. No. 12-80192; *Moyer v. Desmit et al.*, Adv. No. 12-80193; *Moyer v. Kniff*, Adv. No. 12-80194; *Moyer v. Kniff*, Adv. No. 12-80196; *Moyer v. Hartgerink*, Adv. No. 12-80198; *Moyer v. Goodspeed*, Adv. No. 12-80199; *Moyer v. Edwards et al.*, Adv. No. 12-80216; *Moyer v. Agerson*, Adv. No.  12-80217; *Moyer v. Michalowski*, Adv. No. 12-80218; *Moyer v. Wackerlin*, Adv. No. 12-80219; *Moyer v. Olson*, Adv. No. 12-80220; and *Moyer v. Schofield*, Adv. No. 12-80221.

The Second Amended Complaints filed by the Trustee in each adversary proceeding are remarkably uniform in many respects, including nearly identical background allegations.  As the court did for convenience with respect to the prior dismissal motions, it will render a single ruling and enter orders in the respective adversary proceedings based on the conclusions expressed in this Opinion and Order.

In compliance with the court's earlier order requiring a more definite statement, the Trustee has identified the specific transfers he seeks to avoid, listing them by date, name of the transferor, and amount.  However, in only six of the Second Amended Complaints does the Trustee seek to avoid and recover transfers that he identifies as emanating directly from the Debtor.[4]  In all twenty-one complaints, however, he seeks relief with respect to transfers formally made by the Related Entities.

The Trustee's efforts to recover transfers made by the Related Entities has prompted a chorus of criticism from the Defendants who, nearly in unison, argue that the Trustee lacks standing or statutory authority to recover transfers made by a non-debtor.  They again seek dismissal under Fed. R. Civ. P. 12(b)(6).[5]

### IV.  ALLEGATIONS AGAINST THE KOOISTRAS

1.    The Transfers at Issue

The key allegations against defendants David and Nicole Kooistra include 22 separate transfers, only two of which came directly from the Debtor:

> The records relied upon by the Trustee at the time of this
> Complaint demonstrate that Defendants received the following

---

[4] *Moyer v. Kooistra et al.*, Adv. No. 12-80175; *Moyer v. DeKock*, Adv. No. 12-80176; *Moyer v. Buggia,* Adv. No. 12-80179; *Moyer v. Hartgerink*, Adv. No. 12-80198; *Moyer v. Goodspeed*, Adv. No. 12-80199; and  *Moyer v. Edwards et al.*, Adv. No. 12-80216.

[5] In *Moyer v. Michalowski*, Adv. No. 12-80218, the Defendant, who filed an answer, seeks summary judgment in the alternative.

transfers totaling Two Hundred Fifty-Two Thousand Seven Hundred and 00/100 Dollars [sic] ($263,700.00) (the "Transfers"):

a.  $15,000 on 2/23/07 from WKPE
b.  $11,000 on 5/8/2007 from WKPE
c.  $8,000 on 3/28/07 from WKPE
d.  $15,000 on 5/14/07 from WKPE
e.  $10,000 on 6/1/07 from WKPE
f.  $15,000 on 6/1/07 from WKPE
g.  $15,000 on 6/19/07 from WKPE
h.  $5,000 on 6/19/07 from WKPE
i.  $25,000 on 8/8/07 from WKPE
j.  $25,000 on 11/8/07 from WKPE
k.  $10,000 on 11/9/07 from WKPE
l.  $20,000 on 11/19/07 from WKPE
m.  $13,000 on 12/11/07 from WKPE
n.  $10,000 on 1/8/08 from WKPE
o.  $2,200 on 8/13/08 from WKPE
p.  $7,500 on 4/3/09 from WKPE
q.  $10,000 on 6/28/07 from MMF
r.  $22,000 on 11/24/07 from MMF
s.  $1,000 on 12/4/07 from MMF
t.  $10,000 on 1/18/08 from MMF
u.  $6,000 on 9/16/06 from Debtor
v.  $8,000 on 9/20/06 from Debtor

*See* Second Amended Complaint at ¶ 69.  As this list reveals, of the $263,700.00 that the Trustee is seeking to avoid and recover from the Kooistras, the Trustee contends that only $14,000.00 came directly from the Debtor.

2.    The Defendants' Argument and Trustee's Response

To the extent the Trustee seeks to recover Transfers made by the Related Entities (rather than the Debtor), the Defendants challenge his authority because a trustee may only avoid a "transfer of an interest of *the debtor* in property . . ."  11 U.S.C. § 544(b)(emphasis added).  Most of the Transfers were made by MMF and WKBE, and not the Debtor.  In addition to the statute, the Defendants generally rely on Judge Shefferly's opinion in *Lewis v. Summers (In re*

*Summers)*, 320 B.R. 630, 648-49 (Bankr. E.D. Mich. 2005) (trustee of shareholder could not avoid transfer by shareholder's wholly-owned corporation as fraudulent conveyance) and similar authorities.[6]

Evidently anticipating the argument against the Trustee's authority, the next paragraph in the Second Amended Complaint provides the supposed lynchpin of the case, or at least an explanation for why the Trustee seeks to avoid the Related Entities' transfers:

> Based on Debtor's fraudulent scheme and use of the Entities as a conduit to his scheme, which true purpose was the facilitation of the fraud, any of the Transfers made to or from the Entities are in fact transfers made to or from the Debtor.

*See* Second Amended Complaint at ¶ 70. Elsewhere in his pleading, the Trustee amplifies his theory by alleging that the Debtor and the Related Entities are one in the same because they did not observe corporate formalities, had no separate property, and commingled funds, among other hallmarks of alter egos. *See, e.g.*, *id*. at ¶¶ 43-47, 65.

In response to the latest dismissal motions, the Trustee offers a three-pronged argument. First, he urges the court to treat the Debtor and the Related Entities as "one and the same" to prevent the Debtor from getting away with fraud, essentially invoking the public policy against using the bankruptcy court as a haven for cheats. Second, the Trustee argues that because the Debtor owned the Related Entities, he owned their property. Third, he contends that he has standing to "bring an alter ego claim."

The court will address each argument in turn.

---

[6] *Cambridge Tempositions, Inc. v. Cassis (In re Cassis)*, 220 B.R. 979 (Bankr. N.D. Iowa 1998) (dismissing claim for fraudulent transfers commenced by trustee for shareholder/debtor's estate when property belonged to corporation) (*citing In re Miner*, 185 B.R. 362, 367 (N.D. Fla. 1995), *aff'd,* 83 F.3d 436 (11th Cir. 1996)).

V.  ANALYSIS

1.      Plain Language Supports Dismissal

The Supreme Court has not hesitated to remind the lower courts, especially bankruptcy courts, that where the language of a statute is plain, the court's interpretative task generally ends. *Lamie v. United States*, 540 U.S. 526, 534 (2004) (citing cases).  Here, the plain language of the Bankruptcy Code supports dismissal of the Trustee's complaint to the extent he seeks to avoid and recover transfers made by the Related Entities, rather than the Debtor.  *See* 11 U.S.C. § 544(b)(1) (authorizing a trustee to avoid "any transfer of an interest of the debtor in property").

The term "debtor" means "person or municipality concerning which a case under this title has been commenced."  11 U.S.C. § 101(13).  Without resorting to the state law alter ego doctrine or the federal remedy of substantive consolidation, the language of the statute upon which the Trustee relies dooms his efforts to recover transfers that the Related Entities may have made.  *Summers*, 320 B.R. at 630 (dismissing cause of action brought by shareholder's bankruptcy trustee to avoid transfers of the shareholder's wholly-owned corporation).

The most patent difficulty with the Trustee's argument is that it redefines the term "debtor" in a manner at odds with Congress's carefully-wrought definition.  In essence, the Trustee would have the court blue-pencil the definition of "debtor" to include a debtor's "affiliates" (another defined term), or any other entity that might qualify as an alter ego under applicable non-bankruptcy law.  The Bankruptcy Code's plain language does not include such an expansive definition.  Indeed, because the term appears throughout the statute, accepting the Trustee's extravagant definition would introduce considerable uncertainty into the country's commercial transactions, both before and after bankruptcy.  The expansion that the Trustee advocates in this adversary proceeding, however laudable to address the alleged fraud in this

instance, would unravel the statutory scheme Congress carefully knit throughout the numerous sections tied to the definition of "debtor."   Accepting the Trustee's definition would expand federal bankruptcy jurisdiction over persons and property pursuant to 28 U.S.C. § 1334, render numerous affiliate transactions voidable under 11 U.S.C. § 362, expand substantive rights under Chapter 5 (as this case illustrates), and invite a host of other unintended and unpredictable consequences.   Indeed, neither the Supreme Court nor Congress could accomplish such an expansion even through the federal rule making process, so it should come as no surprise that the court could not accomplish the same result through judicial fiat.   *See* 28 U.S.C. § 2075 (bankruptcy rules shall not "abridge, enlarge, or modify any substantive right").   Accepting the Trustee's expanded definition of "debtor" would also require the court to push the state law alter ego doctrine beyond "the frontiers of established state law." *ALT Hotel, LLC. v. DiamondRock Allerton Owner, LLC (In re ALT Hotel, LLC),* 2012 WL 4361434 (Bankr. N.D. Ill. 2012) (declining to apply inside reverse veil piercing because state law did not clearly recognize the doctrine).[7]

2.      Public Policy Argument

Acknowledging the Defendants' arguments and their reliance on Judge Shefferly's decision in *Summers*¸ the Trustee first advances a policy argument, contending that "dismissing the Trustee's claims would allow any individual to form a sham business solely for the purpose of conducting fraudulent schemes because the bankruptcy courts will shield their non-debtor alter ego entities from ramification." *See* Trustee's Response at p. 5.   Furthermore, according to the Trustee, ruling for the Defendants would amount to "an open invitation for crooks and their

---

[7] In his response brief, Trustee's counsel candidly admits that "the Trustee has not found a Michigan case directly on this point."   *See* Plaintiff's Response to Defendant's Motion to Dismiss Second Amended Complaint ("Trustee's Response," DN 21) at p. 9.   This confirms that the Trustee is pushing the court beyond the limits of established state law.

friends/co-conspirators to take advantage of the 'system' and judicial endorsement of the Debtor's alleged fraud." *See* Trustee's Response at 5, n.1.  The court disagrees.

First, the court does not have a "roving commission" to do equity or settle all scores, and neither does the Trustee.  Both must act within the confines of their respective statutory authority. *Chase Manhattan Mortgage Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 473 (6th Cir. 2008).  Although the Trustee does not cite 11 U.S.C. § 105(a), his appeal to equity and policy naturally conjures up this reservoir of judicial authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The applicable statute -- 11 U.S.C. § 544(b) -- only authorizes a bankruptcy trustee to avoid transfers of an interest of the "debtor," not third parties, and the Sixth Circuit has warned bankruptcy courts to avoid problems that may arise "when courts effectively rewrite bankruptcy statutes in order to reach a result deemed 'equitable.'" *In re Lee*, 530 F.3d at 473.

Further, although the Trustee argues that avoidance is the only way to address the Debtor's supposed prepetition misconduct, the premise of that argument is flawed.  Certainly, criminal law is not toothless,[8] and Michigan's civil law also provides remedies to creditors whom the Related Entities may have harmed.  With respect to MMF, for example, the Michigan Attorney General supervises charitable organizations to ensure that their property is used for charitable purposes.  So MMF -- which, according to the Trustee, is organized as a charitable organization -- may be subject to considerable scrutiny.  M.C.L. § 450.2821(1)(c) (attorney general may seek dissolution of nonprofit corporation for conducting affairs in unlawful manner).  With respect to the Related Entities generally, perhaps the Trustee as the owner of the

---

[8] *See* Transcript of September 12, 2012 hearing in Grand Rapids, Michigan, on Defendants' Motions to Dismiss (DN 16, "Tr.") at 61:2-4 (noting that the FBI is investigating the Debtor).

corporations[9] might cause the Related Entities to file bankruptcy petitions if he is concerned the Debtor and his confederates are taking advantage of creditors.[10]   Moreover, for their part, the Related Entities' own creditors might consider filing an involuntary petition against them, if they can satisfy statutory requirements.  *See* 11 U.S.C. § 303.

Finally, the Bankruptcy Code includes provisions limiting a debtor's discharge to guard against its use as a shield for prepetition misconduct, including specified fraudulent acts.  *See, e.g.,* 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 727(a).  The court cannot accept the Trustee's public policy and equitable arguments without also undermining Congress's careful balancing of interests expressed in these statutes, including the relevant time-periods, deadlines, and other prerequisites governing such relief.  The point is, there are numerous legal remedies that cause the court to hesitate to rely on its supposed equitable powers, especially when doing so would short-circuit carefully designed statutory schemes, including the Bankruptcy Code and state commercial law.  The court rejects the Trustee's appeal to public policy.

3.      Property Interest Argument

The Trustee argues that even without resorting to veil piercing or alter ego doctrines, the property of the Related Entities is included within the property of the Debtor's estate under 11 U.S.C. § 541(a) because the Debtor owned 100% of the Related Entities.  *See* Trustee's Response at p. 9, n. 10.  The argument ignores basic principles of corporate law, and cannot withstand even casual scrutiny.

---

[9] It seems doubtful that the Trustee "owns" MMF, which according to the complaint is a charity, and most likely a non-stock, non-profit corporation under the Nonprofit Corporation Act, M.C.L. § 450.2101 *et seq.*

[10] Of course, if Mr. Moyer had caused the Related Entities to file their own petitions, the United States Trustee likely would have appointed someone other than Mr. Moyer as trustee, since the debtors would probably have claims against each other.  The Trustee's alter ego theory, which effectively treats the Related Entities as if they were debtors in bankruptcy, undermines the Bankruptcy Code in this important respect, among others.

WKPE is a limited liability company, and Michigan law could not be clearer:  a member in a Michigan limited liability company, even a sole member, "has no interest in specific limited liability company property."  *See* M.C.L. § 450.4504(2).

As for MMF, the complaint describes that entity as a charitable or non-profit foundation, which probably means that it is organized on a non-stock basis and is therefore owned by no one. Even assuming, *arguendo*, that MMF is a corporation that issues shares included within the bankruptcy estate, the law is equally clear:  a corporation has a separate legal existence from its shareholders, and the corporation, not its shareholders, owns the corporate assets.  *See Hollins v. Brierfield Coal & Iron Co.*, 150 U.S. 371, 383 (1893) ("[A corporation] holds its property as any individual holds his, free from the touch of a stockholder who, though equitably interested in, has no legal right to, the property."); *Flint Cold Storage v. Dep't of Treasury*, 776 N.W.2d 387, 397 (Mich. Ct. App. 2009) (*citing Bourne v. Sanford*, 41 N.W.2d 515, 522 (Mich. 1950) *and Montgomery v. Cent. Nat'l Bank & Trust Co.*, 255 N.W. 274, 276 (Mich. 1937)).

Next, the Trustee argues that he owns the property of the corporations because he owns their shares.  As counsel for one of the defendants asserted without contradiction at an earlier hearing, MMF and WKPE continue to operate.  *See* Tr. at 50:5-16 (remarks of Sandra Hamilton, Esq.); Second Amended Complaint at ¶ 17 (MMF "still operates under the guise of a charitable organization").  If the Related Entities (as opposed to the Debtor's membership or stock interests, if any) are in fact included within the estate, then the Trustee may be violating either 28 U.S.C. § 959 or 11 U.S.C. § 721, or both, by permitting estate assets to continue operating a fraudulent scheme, under the "guise" of a charity, and doing so without court authority.  The court rejects this part of the Trustee's argument.

The cases the Trustee cites for the notion that the corporate property of a debtor's wholly-owned corporation is included within the debtor's bankruptcy estate are not persuasive either. For example, *In re Moses*, 225 B.R. 360, 364 (E.D. Mich. 1998), has been criticized as a remarkable departure from settled corporate law in *In re Bruce*, 2002 WL 34705759 (Bankr. S.D. Ga. July 29, 2002).  The court agrees with the criticism and regards *Moses* as neither binding nor persuasive.

As for *In re Baker*, 68 B.R. 360, 363 (Bankr. D. Or. 1986), it is true that the judge in that case regarded the wholly-owned corporation as property of the estate, but he chided the chapter 11 trustee of the corporation's shareholders for appointing himself as president of the corporation and paying himself for this office.  Although the *Baker* court used imprecise language in describing the relationship of the wholly-owned corporation to the shareholders' bankruptcy estate, the case simply condemned the estate's fiduciary for profiting from his use of estate property, for appointing himself as president, and for drawing a salary.  In effect, the chapter 11 trustee in *Baker* misused the shares (estate property) in a self-serving way, and the court properly surcharged him.  It is neither fair nor wise, however, to cite that case as a license to depart from well-established corporate and property law precluding a shareholder from asserting an interest in corporate property.

The court has considered the other authority upon which the Trustee relies and finds the cases unconvincing.  In short, the Trustee's theory that the Debtor held an interest in the Related Entities' property is not a viable legal theory that can withstand a motion to dismiss.  *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009) ("to survive a motion to dismiss, the complaint must contain either direct or

inferential allegations respecting all material elements to sustain a recovery under some viable legal theory").

4.       Alter Ego Argument

The Trustee alleges that the Debtor and the Related Entities are alter egos and therefore, as the Debtor's bankruptcy trustee, he may avoid the property that the Related Entities allegedly transferred to the Defendants in furtherance of the Debtor's Ponzi scheme.  There are several ways of interpreting the Trustee's position:  the first expands the definition of the "debtor" and the concept of "property of the estate" by relying on 11 U.S.C. § 541(a); the second relies on 11 U.S.C. § 544(a) without citing that statute, arrogating to the Trustee the individual rights of the Related Entities' creditors.  Neither amounts to a viable legal theory under *Tam Travel*.

First, the court notes that the Trustee has not invoked the authority many bankruptcy courts recognize as justifying substantive consolidation of debtors and other entities, even though the court inquired about this issue during oral argument on the first dismissal motions.  Tr. at 63:8-13.  Instead, he relies on the state law alter ego doctrine, which many courts have distinguished from substantive consolidation.  *See, e.g., Gold v. Winget (In re NM Holdings Co., LLC),* 407 B.R. 232, 281 (Bankr. E.D. Mich. 2009) (collecting cases and implying that bankruptcy trustee may not have standing under alter ego doctrine to consolidate debtors, but he does have standing to seek substantive consolidation under federal law); *In re Bonham*, 226 B.R. 56, 76-77 (Bankr. D. Alaska 1998) (distinguishing alter ego and veil piercing doctrines, which are concerned with principle of limited liability, from substantive consolidation, which addresses

enterprise liability).[11]  Even if he had sought substantive consolidation, before imposing such an extraordinary remedy the court would require procedural and substantive safeguards not available in this adversary proceeding.

Second, although the Trustee's papers refer to his "alter ego claim," in fact, "alter ego" is not a claim at all, and in any event, it is not equivalent to substantive consolidation.  Rather, the alter ego doctrine is an equitable remedy that a creditor may invoke to prevent a shareholder from using a corporation for fraudulent or improper purposes.  The Sixth Circuit explains that the alter ego doctrine "fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his or her own personal business."  *Spartan Tube and Steel, Inc. v. Himmelspach (In re RCS Engineered Products Co., Inc.)*, 102 F.3d 223, 226 (6th Cir. 1996). Invoking the doctrine simply permits the successful proponent to assert a claim against the supposed alter-ego; it does not magically permit the court to substantively consolidate assets and liabilities.  *Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*, 469 B.R. 713, 726 (Bankr. W.D. Mich. 2012) (application of alter ego or veil piercing doctrines means that "the protection afforded by the corporate form will be denied, thereby exposing the abusive shareholder to his corporation's debts").[12]  So, even assuming the Trustee had standing to invoke the alter ego doctrine, either as the Debtor's successor under 11 U.S.C. § 541 or the

---

[11] As just noted, the Trustee does not seek substantive consolidation nor would the court permit him to do so unless the court were satisfied that the entities to be consolidated (and their creditors) were adequately notified and represented in the proceeding.  Moreover, it is not at all clear that the consolidation, if ordered, would be effective *nunc pro tunc* to the date of the Transfers many years pre-dating the petition date.  *In re New Center Hosp.*, 187 B.R. 560, 572 (E.D. Mich. 1995) (bankruptcy court's ordering substantive consolidation *nunc pro tunc* without first considering creditor reliance, benefits and harm, was abuse of discretion).

[12] *But see Simon v. Brentwood Tavern (In re Brentwood Golf Club, LLC)*, 329 B.R. 802, 811 (Bankr. E.D. Mich. 2005) (evidently equating effects of alter ego and substantive consolidation, stating that "[o]nce Tavern's corporate veil is pierced, there is no need for a determination that the entities need to be substantively consolidated because the assets and operations of one are, as a matter of law, the assets and operations of the other and, thus, any alleged assets of Tavern are property of the estate.").  The court notes that the decision in *Brentwood Golf* is perhaps better supported by the court's reference to substantive consolidation than the alter ego doctrine.  *See Simon v. ASIMCO Tech., Inc. (In re American Camshaft Specialties, Inc.),* 410 B.R. 765, 784 (Bankr. E.D. Mich. 2009) (noting that *Brentwood Golf* considered both doctrines).

representative of creditors under § 544(a), the doctrine would not permit the court to treat the Related Entities' property as the Debtor's, such that the Trustee could then pursue the Defendants in these proceedings.

The authorities the court has considered, including those within the Trustee's Response, reveal a consensus that application of veil piercing and alter ego doctrines in bankruptcy depends upon state, rather than federal, law.  *See, e.g., RCS Engineered Products*, 102 F.3d at 225 (*citing Butner v. United States*, 440 U.S. 48 (1979)); *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 853 (6th Cir. 2002).  The court is not persuaded that Michigan law supports the Trustee's invocation of the alter ego doctrine.

At oral argument regarding the first round of dismissal motions, the Trustee's counsel stated that the Trustee, as the Debtor's successor, may pierce the Related Entities' corporate veils and apply corporate property to the payment of the Debtor's debts.  In response to the court's question about his theories, specifically whether the Trustee stepped into the Debtor's shoes as shareholder in pursuing the fraudulent conveyance counts, Trustee's counsel responded:

> That's the trustee's theory or belief, that the debtor, on his bankruptcy schedule, listed these four entities.  And he's the sole shareholder of these four entities.  The trustee stepped over to these four entities.

*See* Tr. at 63:25-64:43.  So understood, it appears that the Trustee is relying on what courts and commentators have referred to as "reverse veil piercing" in which "a corporation will be held liable for the debts of a corporate insider, a shareholder, or a subsidiary."  *In re ALT Hotel, LLC*, 2012 WL 4361434, *14.  The Sixth Circuit, however, has predicted that Michigan courts would not permit reverse veil piercing.  *RCS Engineered Products*, 102 F.3d at 226.

In response to the Defendants' reliance on *RCS Engineered Products*, the Trustee correctly notes that that case involved a subsidiary's attempt to apply the alter ego doctrine

against its parent, whereas here, the Trustee *qua* shareholder or "parent" is seeking to apply the doctrine against the subsidiaries. Although the *RCS Engineered Products* panel rejected the authority of a corporate subsidiary's bankruptcy trustee to assert the alter ego doctrine against the subsidiary's parent, the reasons for precluding the *shareholder* (or his successor) from doing so are even stronger. Indeed, the Sixth Circuit observed the general rule that "the corporate veil is pierced only for the benefit of third parties, and never for the benefit of the corporation or its stockholders." *RCS Engineered Products*, 102 F.3d at 226. In other words, Michigan law would not permit the Debtor (as shareholder) to pierce the corporate veil in order to use the Related Entities' property to satisfy his own debts. Doing so violates a foundation of corporate law -- the absolute priority rule -- which provides that the debts of a corporation must be satisfied (or provided for) before the shareholder may profit. By invoking 11 U.S.C. § 541, the Trustee, as the Debtor's successor in interest, is asking the court to permit him to use corporate property to pay the shareholder's debts. Neither 11 U.S.C. § 541 nor Michigan law permits this, as the Trustee's counsel practically conceded on the record. *See* Tr. at 64:7-9 ("Will the shareholder be able to pierce his own corporate veil in Michigan? Doesn't sound like it makes sense."). A trustee who asserts his debtor's rights under 11 U.S.C. § 541 obtains no greater rights or title than his debtor enjoyed prepetition. *Demczyk v. Mutual Life Ins. Co. of New York (In re Graham Square, Inc.)*, 126 F.3d 823, 831 (6th Cir. 1997) (citations omitted); *see also In re Cook*, 457 F.3d 561, 566 (6th Cir. 2006) and *Spradlin v. Jarvis (In re Tri–City Turf Club, Inc.),* 323 F.3d 439, 443–44 (6th Cir. 2003). That the Trustee files these adversary proceedings in an effort to benefit the Debtor's creditors under the Bankruptcy Code is not the sort of federal purpose that would persuade the court to ignore state law limits on property and corporate law under *Butner* or the Rules of Decision Act. 28 U.S.C. § 1652.

In his papers, the Trustee has cited 11 U.S.C. § 544(b) rather than § 544(a), so it is not clear that he is invoking his "strong arm" authority in making the alter ego argument. For the sake of completeness, however, to the extent that he intended to rely on § 544(a), the court would not permit him to do so. *In re Del–Met Corp.,* 322 B.R. 781, 835 (Bankr. M.D. Tenn. 2005) (finding that the "Sixth Circuit would not embrace § 544(a) as a source of standing" of chapter 7 trustee to assert veil piercing theory); *Spartan Tube and Steel, Inc. v. Himmelspach (In re R.C.S. Engineered Products Co., Inc.),* 168 B.R. 598 (Bankr. E.D. Mich. 1994) (rejecting 11 U.S.C. § 544 as basis for asserting alter ego claim), *rev'd on other grounds*, 102 F.3d 223 (6th Cir.1996). As the court understands the veil piercing and alter ego theories in Michigan, they may provide remedies to protect individual creditors against misuse of the corporate form. Because a bankruptcy trustee cannot assert causes of action belonging to specific creditors, however, and because the alter ego remedy is akin to such a cause of action, the court would not permit the Trustee to assert it under 11 U.S.C. § 544(a). *See Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416 (1972) (trustee cannot assert causes of action belonging to specific creditors).

Finally, the Trustee argues that Judge Shefferly's *Summers* decision actually support his reliance on the alter ego theory. The court disagrees. It is true, as the Trustee notes, that Judge Shefferly in *dicta* suggested that the alter ego claim belonged to the corporation, and that the trustee of that corporation might have standing to assert it against a controlling shareholder. Without accepting or rejecting that premise, however, the court notes that permitting a subsidiary to assert a claim against the parent or controlling shareholder implicates different policies than permitting a shareholder or parent to assert an alter ego claim against the subsidiary. The former implicates the principle of limited liability, relaxation of which punishes the misbehaving

shareholder; the latter implicates the absolute priority rule, relaxation of which punishes the corporation's innocent creditors. Judge Shefferly's comments about standing to assert alter ego claims in *Summers* involved the former situation, not the latter. Moreover, permitting an action by a corporation against a controlling shareholder who misused and injured the corporation is an unremarkable application of corporate law principles recognizing that a corporation may sue those who harm it, even if the wrongdoer is an insider. *See, e.g.,* M.C.L. § 450.4308 (member is liable to LLC for illegal distribution); *id.* § 450.4404 (manager is accountable to company); *see, e.g., Algonac Marine Hardware Co. v. Cline*, 159 N.W.2d 150 (Mich. App. 1968) (corporation may sue controlling shareholders for breach of fiduciary duty to corporation).

## VI.  CONCLUSION AND ORDER

The Trustee has no viable legal theory under 11 U.S.C. § 544(b) for avoiding any transfers that the Related Entities made, so to this extent dismissal is appropriate. *Tam Travel*, 583 F.3d at 903.

The court has already granted the Trustee leave to amend once, in addition to the amendment the Trustee effected earlier in this adversary proceeding as of right. In the Trustee's Response, he did not seek leave to amend. Moreover, it is clear that further amendment which seeks to recover non-debtor transfers would be fruitless under state and federal law. Accordingly, to the extent the Trustee's Second Amended Complaint seeks to avoid transfers that the Related Entities made, the pleading will be dismissed without leave to amend. To the extent, however, that the Trustee seeks to avoid transfers the Debtor made, the Second Amended Complaint survives.

Finally, as noted above, the court issues this Opinion and Order to express the rationale for the separate orders it will enter in other the adversary proceedings listed in note 3.

NOW, THEREFORE, IT IS HEREBY ORDERED that the motion to dismiss filed in *Moyer v. Kooistra,* Adv. No. 12-80175 (DN 17) is GRANTED to the extent the Second Amended Complaint seeks to avoid transfers from entities other than the Debtor and DENIED in all other respects.

IT IS FURTHER ORDERED that the Clerk shall enter a copy of this Opinion and Order on the docket in each of the twenty-one adversary proceedings identified in this Opinion and Order at p.4, n.3.

IT IS FURTHER ORDERED that the Clerk shall enter a separate order conforming to this Opinion and Order on the docket in each of the other twenty adversary proceedings identified, *supra*, at p. 4, n. 3.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Jeff A. Moyer, Esq., Earl R. Johnson, Esq., John T. Gregg, Esq., Perry Pastula, Esq., Frederick R. Bimber, Esq., Sandra S. Hamilton, Esq., Harold E. Nelson, Esq., Robert F. Wardrop, II, Esq., and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated November 29, 2012**



Scott W. Dales
United States Bankruptcy Judge